IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

| | |
|---|---|
| Danxiao Information Technology Ltd., Shenzhen Love Sense Technology Co. Ltd., and Shenzhen Aigan Technology Co. Ltd., (collectively d/b/a "Lovense"),<br><br>Plaintiff,<br><br>v.<br><br>Shenzhen Xiaoteng Technology Limited (d/b/a "Folove", "DOLP", "MYLUSH", "SzDo Home", "DoHome Direct", "My Doit", and "Xiaoteng"),<br><br>Defendant. | Case No. |

## **VERIFIED COMPLAINT**

Danxiao Information Technology Ltd., Shenzhen Love Sense Technology Co. Ltd., and Shenzhen Aigan Technology Co. Ltd., collectively doing business as "Lovense" (collectively, the "Plaintiff" or "Lovense"), through its counsel, PMJ PLLC, states as follows:

## **INTRODUCTION**

1. This is an action for (i) copyright infringement under 17 U.S.C. §106; (ii) design patent infringement under 35 U.S.C. §271; (iii) common law trademark infringement; (iv) false endorsement or false association under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A); and (v) unfair competition under Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2 (a)(2).

2. The claims arise from the willful and deliberate efforts of the Defendant to compete with Lovense by infringing upon Lovense's intellectual property rights to create confusion in the marketplace and bolster their own sales.

3. Unless the Defendant is enjoined from infringing Lovense's intellectual property rights and otherwise deceiving the consuming public and tarnishing Lovense's reputation, Lovense will continue to suffer substantial ongoing and irreparable harm.

**PARTIES**

4. The Plaintiff is incorporated in China, and regularly does business in the United States and the Northern District of Illinois.

5. Upon information and belief, Defendant is a company that does business under various names, including "Folove", "DOLP", "MYLUSH", "SzDo Home", "DoHome Direct", "My Doit", and "Xiaoteng". The Defendant is incorporated in China and has no place of business or employees located in the U.S.

6. Defendant does, however, conduct business throughout the U.S., including in the Northern District of Illinois, via the internet and various "stores" hosted by Amazon.com, AliExpress, and via an independent website, www.folove.shop, that uses U.S.-based PayPal.com as a payment processor.

**JURISDICTION AND VENUE**

7. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§1331 and 1338, and 15 U.S.C. §1121.

8. This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. §1367(a) because those claims are part of the same controversy. The Plaintiff's state law claims share the same operative facts with its federal claims, and the parties are identical.

9. This Court has personal jurisdiction over the Defendant because it transacts business within the state of Illinois and infringed on the Plaintiff's intellectual property rights in Illinois.

10. The Court may grant declaratory relief and any other proper relief pursuant to 28 U.S.C. §§2201 and 2202.

11. Venue is proper pursuant to 28 U.S.C. §1391 because this cause of action arises out of events occurring in part or in full in this District.

**STATEMENT OF FACTS**

**I.  LOVENSE'S FEDERAL AND COMMON LAW RIGHTS**

12. Lovense is a world-wide known brand in the industry of consumer products, including adult toys. Lovense, who has been in this industry for over ten (10) years, invests heavily in technology and innovation offering its consumers the most advanced products. Lovense made Forbes 2020 Disruptive Innovator Award list and AVN's 2017 "Outstanding Powered Product" list. Lovense's products have also been named best adult toy of the year and "Best Tech Toy" several times.

13. Lovense has expended hundreds of thousands of dollars to promote its products in the U.S. and throughout the world, both at major events such as the DoKomi Fest and the AVN Novelty Expo, which gather tens of thousands of visitors annually, and online. Lovense's YouTube reviews have been watched by approx. 2.5 million potential consumers, and Lovense has sold thousands of its products around the world, including to customers located in Chicago, Illinois.

14. Lovense's cutting edge products include the "Lush" and its upgraded versions, the "Lush 2" and the "Lush 3" (collectively the "Original Product" or the "Product").

15. Lovense has advertised and sold its Original Product and using the mark Lush (the "Mark") in the U.S. since at least August 21, 2015, and its trademark "Lush" (the "Mark") has been consistently displayed and protected. *See* Exhibit 1. The name Lush and the design of the Original Product have remained essentially the same through three generations of the Original Product, and Lush product has gained great popularity among consumers, and the "Lush" Mark is easily associated with the Original Product. *Id.*

16. While Lovense's federal trademark application is pending (Lovense applied for a

3

federal trademark for "LUSH" on February 6, 2020), its well-established Mark is thus protected by the common law trademark principles (the "Common Law Trademark"). *See* Exhibit 2 (Lovense TM application).

17. In addition to its Common Law Trademark, Lovense owns several federal registrations for its Original Product, including a copyright on the technical drawing of the Original Product (Registration No. 2-286-349) (the "Copyright") and design patents for the Original Product (Registration Nos. 792,980 and 948,069) (collectively, the "Patent"), copies of which are attached as Exhibit 3 (design patent and copyright registration).

18. The above-mentioned certificates are valid and enforceable and constitute prima facie evidence of Lovense's exclusive right to use the design and image of the Original Product pursuant to 17 U.S.C. §410 (copyright) and 35 U.S.C. §289 (design patents).

## II. DEFENDANT'S WRONGFUL ACTS

19. In an obvious attempt to gain from Lovense's success, the Defendant has been displaying, advertising, and offering to sell or selling unauthorized and inferior copies of the Original Product (the "Counterfeit Product"), using protected elements of the Original Product, in violation of Lovense's Copyright, Design Patent, Common Law Trademark, and applicable Illinois state law.

20. In an exchange of emails between Lovense and the Defendant, the Defendant claimed that it owned the brand "FOLOVE", and confirmed that its online stores Folove, DOLP, MYLUSH, SzDo Home, DoHome Direct, My Doit, DOLP, at a minimum, sell the same counterfeit products using the "Lush" mark. Moreover, the Defendant expressly acknowledged that it is the owner of the Mylush store on Amazon.com in emails received by the Plaintiff. *See* Exhibit 4 (email exchange between Lovense and the Defendant).

21. Defendant also applied for a trademark registration for the name "MYLUSH" in

February 2020, despite Lovense's existing trademark application for the mark "Lush" in the same category of products. *See* Exhibit 5 (Defendant's TM application) and Exhibit 6 (MYLUSH Mark). Defendant obviously new of the Lovense Original Product before they applied for the "MYLUSH" trademark mark as it *used images of Lovense's existing webpage which contained the words "Lovense Lush 2."* *See* Exhibit 5, pp. 3, 5.

22. To an ordinary consumer, there is no distinction between advertisements for the Original Product and the Counterfeit Product. Riding on Lovense's established reputation, Defendant has purposefully been presenting its Counterfeit Product so as to mislead consumers to believe Defendant is selling the Original Product. Below are images of Lovense's Original Product (left), as compared to the Defendant's online images of the Counterfeit Product (right).



Full copies of the Lovense Amazon.com page and the Defendant's Amazon.com pages are attached as Exhibit 7 (Lovense's Lush Amazon.com page) and Exhibit 8 (Defendant's counterfeit "Lush" Amazon.com page).

23. Defendant's Counterfeit Product displays the same copyrighted image as that of the Original Product, the same patented design as that of the Original Product, and the same name ("Lush") in its product description. *See* Exhibit 8. Many consumers have reported the Counterfeit Product as being a "counterfeit" of the Original Product on various websites promoted by the Defendant. *Id*.

24. Lovense has never assigned or licensed its Mark, Copyright, or Patent to the Defendant, and it has never authorized or otherwise approved the advertisement, sale, or offer to sell the Original

5

Product.

25. Notwithstanding Defendant's trademark "MYLUSH" has been registered by the Defendant, Lovense remains the owner of all rights, title, and interest in and to the Mark "Lush." Lovense's use of the Mark "Lush" predates the Defendant's trademark application for "MYLUSH", and Lovense is in the process of cancelling the "MYLUSH" trademark.

26. Upon information and belief, at all times relevant hereto, the Defendant has had full knowledge of Lovense's rights to the Mark, Design Patent, and Copyright, including its exclusive right to use and license such intellectual property.

27. Furthermore, Defendant's Counterfeit Product is of a much lower quality than the Original Product, as buyers have attested, and advertised and sold for approximately $40 less than Lovense's Original Product. *See* Exhibits 7, 8. Plaintiff purchased and received the Counterfeit Product from the MyLush Amazon.com store in Chicago, Illinois and confirmed its similar design and inferior quality. *See* Exhibit 9 (invoices for Plaintiff's "test" purchases the Counterfeit Products).

28. Lovense first contacted the Defendant on August 11, 2022, putting it on notice of its infringement of the aforementioned legal right of Plaintiff and demanding that Defendant stop advertising, offering to sell, and selling the Counterfeit Product. *See* Exhibit 9. Nonetheless, Defendant knowingly continues its deceiving and fraudulent practices. In fact, the Defendant has created new listings offering to sell its Counterfeit Product since its communications with Lovense, including a listing created as recently as September 14, 2022. *See* Exhibit 4.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### Copyright Infringement Under 17 U.S.C. §106

29. Lovense repeats and realleges the foregoing allegations above as if fully set forth herein.

30. Lovense is the sole owner of a copyright in an original pictorial work fixed in a tangible

medium of expression. On December 23, 2021, the U.S. Register of Copyrights issued the Plaintiff a certificate of registration (Registration No. 2-286-349) for its artwork depicting the Original Product.

31. Under Section 106 of Title 17 of the U.S. Code, the owner of a copyrighted pictorial work has the exclusive right to reproduce said work, prepare derivative works based on the copyrighted work and display the copyrighted work. 17 U.S.C. §106.

32. Upon information and belief, the Defendant has produced, reproduced, and publicly displayed the Plaintiff's protected work without Plaintiff's authorization, in violation of 17 U.S.C. §106.

33. By committing such acts, the Defendant has infringed the Plaintiff's Copyright. Section 501 of Title 17 of the U.S. Code provides that "anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122… is an infringer of the copyright."

34. The Defendant acted willfully and with the intent to gain financially from the Plaintiff's protected work. Defendant was aware of Plaintiff's Copyright. The Defendant cannot contest having knowledge of the Copyright, yet the Defendant continues to advertise and display Plaintiff's copyrighted work. Defendant has done so with the intent to convince consumers to purchase its Counterfeit Product.

35. Defendant's willful infringement entitles the Plaintiff to actual damages and Defendant's profits.

36. The Defendant's conduct is causing immediate and irreparable harm and injury to the Plaintiff, who has no remedy at law, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court.

**SECOND CLAIM FOR RELIEF**
**Patent Infringement Under 35 U.S.C. §271**

37. Lovense repeats and realleges the foregoing allegations above as if fully set forth herein.

38. Lovense provided actual notice to the Defendant of its infringement prior to filing this lawsuit. The Defendant chose to ignore Plaintiff's request that it stops advertising, offering to sell, or

selling its Counterfeit Product.

39. The Defendant is aware of the Patent's existence and enforceability thereof. Defendant is or should be aware that its actions likely constitute patent infringement.

40. The Defendant has infringed and continues to infringe the Patent by making, importing, using, offering to sell or selling its Counterfeit Product within the U.S., including within the state of Illinois. Defendant's Counterfeit Product's ornamental design is indeed identical, or at the very list very similar, to the design covered in the Patent.

41. Defendant's infringement of the Patent is substantiated by online reviews written by consumers that show they were under the impression the Counterfeit Product actually originated from Lovense. *See* Exhibit 7. And indeed, an ordinary buyer or potential buyer would most likely not notice the Counterfeit Product was different from the Original Product, as the title of the listing for the Counterfeit Product often includes the words "Lush" or "upgraded Lush."

42. Furthermore, the images used by the Defendant to offer to sell or sell its Counterfeit Product(the Counterfeit Product of the MYLUSH Store on Amazon.com) is identical to the image of the Original Product and the ornamental design of the Counterfeit Product (Right) itself is also identical to the design protected by the Patent (Left).

| Images from Lovense's Patent | | Images of Counterfeit Product | |
|---|---|---|---|
| U.S. Patent No. D948,069S | U.S. Patent No. D792,980S | https://www.amazon.com/Silicone-Exerciser-Bladder-Control-Devices/product-reviews/B09J48XCLK/ref=cm_cr_dp_d_show_all_btm?ie=UTF8&reviewerType=all_reviews | The Counterfeit Product image used in the Statement of Use of the MYLUSH trademark Application (*See* Exhibit 5) |



43. The Defendant's advertisements and sales of its Counterfeit Product were not authorized or approved by the Plaintiff. The Defendant did not have authority, permission or a license to use the Plaintiff's design. Defendant's actions are thus a violation of 35 U.S.C. §271.

44. The Defendant's conduct is causing immediate and irreparable harm and injury to the Plaintiff and to its goodwill and reputation and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. The Plaintiff is thus entitled to a permanent injunction preventing the Defendant from further using, importing, offering to sell or sell, Plaintiff's patented design.

45. Under Section 289 of Title 35 of the U.S. Code, the Plaintiff is entitled to all the profits Defendant made infringing Plaintiff's Patent. 35 U.S.C. §289.

46. Furthermore, under Sections 284 and 285 of Title 35 of the U.S. Code, damages may be increased up to three times and attorneys' fees may be awarded to the prevailing party. 35 U.S.C. §§284-285.

47. Here, the Defendant not only knew or should have known there was a valid and enforceable patent preventing them from advertising and offering to sell or selling the Counterfeit Product, the Defendant also knew its actions were causing confusion among consumers. Despite consumers' comments posted on the Defendant's stores and the Plaintiff's cease and desist letter, the Defendant continues to sell

the Counterfeit Product. Worse, the Defendant created new listings to sell its Counterfeit Product after having been contacted by the Plaintiff and being put on notice that it was infringing upon the Plaintiff's intellectual property. Such willful and deliberate conduct warrants qualifying this case as an exceptional case, and warrants an award of three times the assessed amount of damages, as well as attorneys' fees abd costs.

### THIRD CLAIM FOR RELIEF
### Common Law Trademark Infringement

48. Lovense repeats and realleges the foregoing allegations above as if fully set forth herein.

49. Despite having knowledge of Lovense's Common Law Trademark and federal trademark application, the Defendant filed a fraudulent federal trademark application, using Lovense's material, so it could "beat Lovense to the punch." The Defendant's use of the images on Lovense's webpage to file its trademark application is undeniable proof the Defendant knew of the Original Product, and that its tortious conduct was deliberate.

50. Defendant's trademark for "MYLUSH" is not valid, nor is it enforceable. The Defendant can therefore not rely on its registration to oppose Lovense's trademark rights. Lovense's Common Law Trademark remains valid and enforceable against Defendant's use of the name "MYLUSH".

51. As described above, Defendant advertises, offers to sell, and sells the Counterfeit Product under the name "MYLUSH", which is obviously similar to Lovense's mark "Lush". The MYLUSH mark clearly is similar to Plaintiff's "LUSH" mark in spelling, pronunciation, and meaning. For example:

- The "MYLUSH" mark entirely includes Lovense's Mark "LUSH";

- The "MYLUSH" mark was also erroneously registered in same product type of the Plaintiff's LUSH product; and

- The target market for the LUSH and the counterfeit MYLUSH product are identical, which has led to the documented confusion among consumers. *See* Exhibit 8, at p.4.

52. Moreover, Lovense has spent hundreds of thousands of dollars in development and

advertising ensuring that the Lovense Lush maintains its popularity among consumers. Consumers easily associate the "LUSH" name with Plaintiff Lovense. *See* <u>Exhibit 10</u> (Google search results, including a review that states that the Lush 3 is a "design that better hugs the body."). Defendant clearly knew of the popularity of the Lush, and it intentionally used the words "Lush 3" and "upgraded Lush 3", instead of its own mark, to generate sales. This is a clear indication of the Defendant's "willful" conduct, and caused, and continues to cause, confusion among consumers.

53. The Defendant's conduct has caused immediate and irreparable harm and injury to Lovense and will continue to both damage Lovense and confuse the public unless enjoined by this Court. Lovense has no adequate remedy at law and is entitled to injunctive relief and an award of actual or statutory damages under the Lanham Act, 15 U.S.C. §§1116, 1117.

**FOURTH CLAIM FOR RELIEF**
**False Designation of Origin Under 15 U.S.C. §1125(a)**

54. Lovense repeats and realleges the foregoing allegations above as if fully set forth herein.

55. Lovense was using its Mark long before the Defendant started advertising and selling its Counterfeit Product.

56. The Counterfeit Product sold and offered for sale by the Defendant is of the same type and nature as Lovense's Original Product. Furthermore, the Counterfeit Products have caused confusion among consumers, as evidence by the comments of U.S. consumers on Amazon.com and other websites that have promoted and sold the Defendant's Counterfeit Product.

57. This is likely to create – and demonstrably has created – confusion as to the origin of the product or the sponsorship or approval by Lovense. Defendant's actions have also tarnished Lovense's reputation by selling its cheap, low-quality Counterfeit Product.

58. Defendant's intentionally misleading actions are impairing the distinctiveness of Lovense's Mark and degrading the value of Lovense's Mark. As such, Defendant's deliberate actions are

11

a violation of Section 43 of the Lanham Act, 15 U.S.C. §1125.

59. Lovense has no adequate remedy at law. Defendant's actions have already damaged Plaintiff will continue to do so if Defendant's actions are not enjoined by this Court. Additionally, Defendant's conduct being intentional and in bad faith, this Court should find that this case is exceptional pursuant to 15 U.S.C. §1117.

## FIFTH CLAIM FOR RELIEF
**Unfair Competition Under the Illinois Uniform Deceptive Trade Practices Act**

60. Lovense repeats and realleges the foregoing allegations above as if fully set forth herein.

61. Section 2 of the Illinois Uniform Deceptive Trade Practices Act prohibits deceptive practices such as causing confusion or misunderstanding as to the source, sponsorship, approval or certification of goods and services. 815 ILCS 510/2 (a)(2).

62. The Counterfeit Products sold and offered for sale by the Plaintiff are of the same nature as the Lovense's Original Product. The Counterfeit Products are thus likely to cause – and demonstrably have caused – confusion among consumers.

63. By misappropriating and using the Mark, images of the Lovense's product and tradenames associated with the Mark, the Defendant is enticing the public to believe that the Counterfeit Products are of the same origin, source, and quality as the Original Product.

64. Defendant's deceptive actions constitute a false designation of origin and unfair competition, and are therefore in violation of the Illinois Uniform Deceptive Trade Practices Act.

65. Lovense has no adequate remedy at law and if Defendant's aforementioned activities are not enjoined, Lovense will continue to suffer irreparable harm and injury.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff, Lovense, hereby respectfully requests that this Honorable Court:

1. Enter judgment that the Defendant has willfully and deliberately violated the Lanham Act,

15 U.S.C. §§1125; 815 ILCS §§ 510/1 et seq., and Illinois common law, making this an exceptional case;

2.  Enter judgment that the Defendant willfully and deliberately infringed the Plaintiff's Design Patent;

3.  Enter judgment that the Defendant willfully and deliberately infringed the Plaintiff's Copyright;

4.  Enter judgment that the Defendant engaged in deceptive trade practices in violation of the Lanham Act and the Illinois Uniform Deceptive Trade Practices Act;

5.  Enter a preliminary and permanent injunction enjoining and restraining the Defendant, its officers, directors, agents, employees, servants, assigns, successors, distributors and any of its subsidiaries, related, or affiliated entities, from:

> i. using the "Lush" or "Lovense" Marks, or any other name, design, image, logo or device that would constitute a colorable imitation of the "Lush" or "Lovense" Marks in connection with the advertising, marketing, distribution or sale of any product without the Plaintiff's authorization;
>
> ii. using the Original Product's Patented Design, or any design that would constitute a colorable imitation of the Original Product's Design in connection with the advertising, marketing, distribution or sale of any product without the Plaintiff's authorization;
>
> iii. using the Original Product's copyrighted image, or any image that would constitute a colorable imitation of the Original Product's Copyrighted Image in connection with the advertising, marketing, distribution or sale of any product without the Plaintiff's authorization; and
>
> iv. representing in any manner that products advertised or sold by the Defendant are authorized, approved, or sponsored by the Plaintiff, or that such products originate from the Plaintiff. Defendant may not take any action likely to confuse or deceive consumers as to the origin, manufacture, approval, or sponsorship of such products.

6.  Require Defendant to immediately destroy all products, packaging, advertising or other materials related to the Original Product pursuant to 15 U.S.C. § 1118;

7.  Order Defendant to permanently close the "Folove", "DOLP", "MYLUSH", "SzDo Home", "DoHome Direct", "My Doit" stores on Amazon.com, the "Dolp" store on AliExpress, and the

independent website www.folove.shop;

8. Order Defendant to account to Lovense all profits wrongfully earned using Lovense's protected property and to pay Lovense:

    i. All monetary damages, actual and/or statutory, sustained and to be sustained by Lovense as a consequence of the Defendant's conduct, including lost profits, in an amount to be determined at trial;

    ii. All profits, gains and advantages obtained by the Defendant;

    iii. Exemplary damages, including treble damages;

    iv. Pre-judgment interest on all damages; and

    v. Lovense's costs and disbursements in this action, including without limitation, reasonable attorneys' fees, evidence preservation expenses, notary fees, appraisal fees, etc.

9. And awarding such other relief as this Honorable Court deems just and proper.

Respectfully submitted by:

_____
One of the Attorneys for the Plaintiff

Patrick M. Jones (IL #6271256)
John A. Wiberg
Sarah M. Beaujour
PMJ PLLC
The National Building
125 S. Clark St., 17th Fl.
Chicago, Illinois 60603

# VERIFICATION

I, Dan Liu, declare as follows:

1. I am the CEO of Lovense;

2. I have personal knowledge of the facts set out in the foregoing Complaint and if called upon totestify, I would competently testify as to the matters stated therein;

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint are true and correct, except as to matters stated on information andbelief, which I believe to be true.

Executed on October 21, 2022

                                         *s/ Dan Liu*
                                         Lovense

# DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that Defendant take affirmative steps to preserve all data, emails, documents and all other tangible things that relate to Plaintiff or the events described in this Verified Complaint. These materials are likely relevant to the litigation of this claim. If Defendant is aware of anythird-party that has possession, custody or control of any such materials, Plaintiff demands that Defendant requests that such third-party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of Defendant.